CORNELIA ELLINWOOD v. EVERETT H. ELLINWOOD, JR.

No. 8714DC322

(Filed 15 December 1987)

**Divorce and Alimony § 17— constructive abandonment—may be shown without physical cruelty or willful failure to provide support—insufficient findings**

    A finding of constructive abandonment as a grounds for alimony may be supported by a level of willful spousal misconduct which rises above the normal and sometimes commonplace problems associated with marriages involving busy professionals notwithstanding the absence of evidence of physical cruelty or willful failure to provide economic support; however, the findings here regarded post separation events and constructive abandonment may not be based on evidence of actions after the parties separated.

APPEAL by defendant from *Titus, Judge.* Order entered 26 February 1987 in District Court, DURHAM County. Heard in the Court of Appeals 20 October 1987.

On 25 May 1984 plaintiff-wife filed a complaint against defendant-husband seeking, *inter alia,* a divorce from bed and board, alimony, and attorney's fees. The parties separated in August 1984; a judgment of divorce was entered on 21 November 1985. On 29 October 1986 the trial court entered an equitable distribution order dividing the parties' marital property and also held a hearing to determine plaintiff's claims for alimony and attorney's fees. An order entered 26 February 1987 granted plaintiff alimony and attorney's fees based upon a theory of constructive abandonment. From that order defendant appeals.

*James B. Maxwell for plaintiff-appellee.*

*Moore & Van Allen, by Edward L. Embree III and Paul M. Green for defendant-appellant.*

EAGLES, Judge.

Defendant appeals the order awarding alimony and attorney's fees. Because of our disposition of defendant's first assignment of error, we will address only the issue of constructive abandonment as grounds for alimony.

Defendant argues that constructive abandonment as grounds for the award of alimony may be found only upon serious misconduct by the supporting spouse toward the dependent spouse which forces the dependent spouse to leave the home. On the other hand, plaintiff contends that defendant's long hours spent in advancing his career and neglecting his wife and family, his wilful failure to provide emotional support for his wife individually, and his wilful failure to provide support for her in their mutual obligation of rearing their children, constituted constructive abandonment. While we agree with plaintiff that grounds for constructive abandonment are not limited to wilful failure to provide economic support or physical cruelty and abuse toward a spouse; because of errors discussed *infra*, we must reverse and remand for further consideration.

The evidence here tended to show the following. The Ellinwoods were married on 27 March 1963. At the time of their marriage Mrs. Ellinwood was a registered nurse and Dr. Ellinwood was a medical doctor completing his psychiatric residency. Upon finishing his residency, Dr. Ellinwood and the family moved to Lexington, Kentucky, due to his employment. The oldest of their three children, Everett III, was born while they lived in Lexington. About two years later, Dr. Ellinwood accepted a fellowship and joined the Duke University Medical Center staff in Durham. The family moved to Durham and shortly thereafter the remaining children of the marriage, Susan and Bradley, were born.

After the move to Durham problems began to arise in the marriage. Dr. Ellinwood was seldom at home and did not assist in rearing the children. Three months after Bradley was born Mrs. Ellinwood was hospitalized for a hysterectomy. Though he did visit his wife while she was in the hospital, Dr. Ellinwood did not drive her to or from the hospital. Mrs. Ellinwood drove herself to the hospital and a friend brought her home.

Ellinwood v. Ellinwood

Some time later Mrs. Ellinwood talked to her husband about her need for more of his time. Mrs. Ellinwood told her husband that she was lonely and that she needed his help in rearing their children. She indicated that they needed to make the marriage work or a separation would be necessary. Not wanting a separation, Dr. Ellinwood tried to spend more time at home. Mrs. Ellinwood noted some immediate improvement, but unfortunately, the change did not last long. Thereafter, Dr. Ellinwood did not spend much time at home.

The evidence further tended to show that on several specific occasions Dr. Ellinwood did not help feed the children when Mrs. Ellinwood was sick. Dr. Ellinwood did not attend church with his family except for Christmas Eve services. Meanwhile, Mrs. Ellinwood taught Sunday School and Vacation Bible School. Dr. Ellinwood routinely would leave a checklist of things for Mrs. Ellinwood to accomplish during the day. Mrs. Ellinwood was also expected to act as hostess at numerous dinner parties for his professional associates throughout the year.

During this time period Everett III had psychiatric problems and was hospitalized at John Umstead Hospital. Dr. Ellinwood visited his son about twice a month. Mrs. Ellinwood, on the other hand, insured that their son made his weekly counselling sessions. In uncontradicted testimony, Mrs. Ellinwood further stated that while her son was hospitalized at Umstead, her husband did not visit Everett on either his birthday or Christmas.

Finally, during the fall of 1983, Mrs. Ellinwood asked her husband to leave the home and Dr. Ellinwood refused. When Mrs. Ellinwood attempted to move her husband to a separate bedroom, he kicked in her bedroom door. Shortly thereafter Mrs. Ellinwood filed her complaint for divorce from bed and board and three months later Dr. Ellinwood left the marital home.

In order to receive alimony a dependent spouse must first show one of the ten grounds for alimony listed in G.S. 50-16.2. Abandonment, one of these ten grounds, occurs when "[t]he supporting spouse abandons the dependent spouse." G.S. 50-16.2(4). While the statutes neither explicitly address nor define constructive abandonment, we have long recognized that abandonment can occur under a variety of circumstances and, consequently, each case must be looked at according to its specific facts. *Caddell*

*v. Caddell*, 236 N.C. 686, 73 S.E. 2d 923 (1953). One set of circumstances encompasses the theory of constructive abandonment.

In *Panhorst v. Panhorst*, 277 N.C. 664, 671, 178 S.E. 2d 387 (1971), the Supreme Court said that "constructive abandonment by the defaulting spouse may consist of either affirmative acts of cruelty or of a wilful failure, as by a wilful failure to provide adequate support." Additionally, the cumulative effect of mistreatment throughout the years of the marriage may be recited in further support of the constructive abandonment argument. *Mode v. Mode*, 8 N.C. App. 209, 174 S.E. 2d 30 (1970).

Here, plaintiff alleges no affirmative acts of physical cruelty nor does she allege a wilful failure to provide adequate monetary support. Plaintiff alleges as a basis for a finding of constructive abandonment that "the defendant has constructively abandoned the plaintiff in that . . . he [does not] participate in any meaningful way in the homelife of the plaintiff as husband and wife or as father of the minor children" and that he "has generally withdrawn his love, affection and concern for his wife, . . . and the children born of the marriage to the extent that the plaintiff has been forced to rear the children almost as a 'single parent' with little imput [sic], no cooperation and no emotional support from the defendant."

If proven, plaintiff's allegations would support a finding of constructive abandonment notwithstanding the absence of evidence of physical cruelty or wilful failure to provide economic support. The permissible bases are more broad and encompass cruelty by other than mere physical cruelty and, as pointed out in *Panhorst, supra*, wilful failure to fulfill spousal or parental responsibilities beyond merely providing adequate economic support. There remains, as a basis for a finding of constructive abandonment, a level of wilful spousal misconduct which rises above the normal and sometimes commonplace problems associated with marriages involving busy professionals. *Cf. Scheinin v. Scheinin*, 200 Md. 282, 89 A. 2d 609 (1952); *Bryant v. Bryant*, 16 Md. App. 186, 294 A. 2d 467 (1972).

While we hold that constructive abandonment may be shown by mental or physical cruelty, or wilful failure of the defaulting spouse to fulfill obligations of the marriage, the trial court's conclusions must be based on findings of fact which are relevant and

are supported by the evidence. Proof of constructive abandonment may not be based on evidence of actions *after* the parties separated. *Fogleman v. Fogleman*, 41 N.C. App. 597, 255 S.E. 2d 269 (1979). Here, the trial court made findings of fact regarding Dr. Ellinwood's failure to attend his daughter's baccalaureate or her graduation exercises from high school. These events occurred in the spring of 1986, well after the parties' separation in August 1984. The court also found as fact that Dr. Ellinwood had only visited his son at college once and had yet to visit his daughter at her school. These are also post-separation events. Since the trial court improperly considered evidence of these post-separation events, we must reverse the alimony order and remand with instructions that the trial court reconsider the plaintiff's allegations based only on evidence which precedes the date of the separation.

Defendant also assigned as error the trial court's denial of defendant's motion for involuntary dismissal at the close of plaintiff's evidence and at the close of all the evidence. Having concluded that constructive abandonment may occur in instances other than physical cruelty or a wilful failure to provide monetary support, we overrule this assignment of error.

Accordingly, the trial court's order is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges PARKER and COZORT concur.